# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made as of this _____ day of __1/10/2022__, 2022, by and between William "Billy" Short ("Employee") and Qyst, ("Company").

WHEREAS, Employee filed a civil action in the United States District Court for the Eastern District of Pennsylvania docketed at 21-cv-2730 and scheduled for arbitration on January 11, 2022 (the "Civil Action").

WHEREAS, the parties wish to avoid the uncertainty of litigation and trial, and resolve their differences.

NOW THEREFORE, in consideration of the covenants, releases and other provisions contained in this Agreement, and intending to be legally bound hereby, Company and Employee agree as follows:

1. If this Agreement is approved by the Court, and the Employee signs this Agreement the Company will pay Employee:

    a. Twenty five thousand dollars ($25,000.00) payable as follows (the "Payments"):

        i. Sixteen thousand two hundred and fifty dollars ($16,250.00) to Employee.

        ii. Eight thousand seven hundred and fifty dollars ($8,750.00) to Winebrake & Santillo.

    b. The Payments will be paid in a single check made payable to "Winebrake & Santillo, LLC" and reported to the Internal Revenue Service on a 1099 issued to Winebrake and Santillo with that entity's tax identification number, as evidenced by the W-9 form that Employee's counsel emailed to Company's counsel on December 29, 2021.

    c. **If Employee has breached the terms of this Agreement, all obligations of the Company to pay the Payments set forth in paragraph b. shall be terminated. All other terms of this Agreement shall remain in full force and effect.**

2. The parties agree that they will each refrain from making any disparaging statements regarding the other party(s). This extends to both in person as well as any and all forms of electronic communications and social media, including, without limitation, Facebook, LinkedIn, Twitter, and the World Wide Web.

3. Employee, Employee's Counsel, the Company, and Company's Counsel will not make any statements or issue any press release to the media or press concerning the Civil Action or this Agreement and will not contact any media representatives. If contacted by media

1

representatives, Employee, Employee's Counsel, the Company and Company's Counsel may state that the parties amicably resolved the dispute and may direct the media representative to the public record.

4. Employee expressly agrees and understands that the Company does not have, and will not have, any obligation to provide presently or at any time in the future with any payments, benefits or considerations other than those specifically recited in Paragraph 2 above, whether arising out of or in connection with employment.

5. RELEASE OF CLAIMS BY EMPLOYEE:

    a. In consideration of the compensation and other benefits provided herein, Employee knowingly and voluntarily releases and forever discharges the Company and its directors, officers, stockholders, members, employees, agents and representatives (collectively referred to as "Released Parties"), of and from any and all claims arising prior to the execution of this Agreement and either asserted in or reasonably related to the Civil Action, including, but not limited to, all such claims for unpaid regular or overtime wages under the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, or any other federal, state, or local statute, regulation, rule, or common law theory.

    b. This release excludes any claims which Employee may make under state workers compensation or unemployment compensation laws and any claims which by law Employee cannot waive.

    c. Employee will take all necessary steps to ensure that the Civil Action is discontinued with prejudice. If Employee files a future suit alleging violations of the FLSA or Pennsylvania Wage and Hour Law, Employee will be required to immediately return to Company all funds paid to Employee under this Agreement.

7. Employee acknowledges that he has read this Agreement in its entirety, fully understands its meaning and is executing this Agreement voluntarily and of his own free will with full knowledge of its significance.

8. The rights of the Company under this Agreement are assignable to its successors and assigns. Employee may not assign any rights or obligations under this Agreement. This Release is binding on Employee, his dependents, heirs, executors, administrators, legal representatives, agents, and assigns.

9. In the event that any one or more of the provisions of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby. Moreover, if any one or more of the provisions contained in this Agreement is held to be excessively broad as to duration, scope, activity or subject, such provisions will be construed by limiting and reducing them so as to be enforceable to the maximum extent compatible with applicable law.

10. Nothing herein shall be deemed to constitute an admission of wrongdoing by the Company. Neither this Agreement nor any of its terms shall be used as an admission or introduced as evidence as to any issue of law or fact in any proceeding, suit or action, other than an action to enforce this Agreement.

11. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12. The terms of this Agreement and all rights and obligations of the parties thereto, including its enforcement, shall be interpreted and governed by the laws of the Commonwealth of Pennsylvania.

13. Except as otherwise expressly provided herein, the terms contained in this Agreement constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior negotiations, representations or agreements relating thereto whether written or oral with the exception of any agreement concerning non-solicitation, which agreement shall remain in full force and effect, and is hereby confirmed and ratified. Employee represents that in executing this Agreement, he has not relied upon any representation or statement not set forth herein. No amendment or modification of this Agreement shall be valid or binding upon the parties unless in writing and signed by both parties.

14. THE PARTIES ACKNOWLEDGE THAT EACH HAS BEEN OR HAS HAD FULL OPPORTUNITY TO BE REPRESENTED BY COMPETENT AND INDEPENDENT COUNSEL, THAT EACH HAS READ AND UNDERSTANDS THIS AGREEMENT, AND THAT EACH HAS SIGNED THIS AGREEMENT FREELY AND VOLUNTARILY.

IN WITNESS WHEREOF, and intending to be legally bound, the undersigned have executed this Agreement, to be effective as of the Effective Date.

ATTEST:

1/10/2022

_____         _____
Date                                     William Short
                                         *Billy Short* (DocuSigned by: 37A89AB9D3E1463...)


QYST, INC.

1-12-2022

_____         BY: _____
Date                                         John Flick, President

3